J-A14034-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
TOD A. GALLAGHER : No. 1529 WDA 2019

Appeal from the Order Entered September 23, 2019
In the Court of Common Pleas of Butler County Criminal Division at
No(s):  CP-10-CR-0000407-2019

BEFORE:   SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

CONCURRING/DISSENTING MEMORANDUM BY McLAUGHLIN, J.:

FILED OCTOBER 28, 2020

I respectfully concur in part and dissent in part. I agree with the Majority that the Commonwealth's claim that the trial court misinterpreted Commonwealth v. Fulton, 179 A.3d 475 (Pa. 2018), lacks merit. Indeed, the Commonwealth concedes in its brief to this Court that the trial court did not misinterpret the case. See Commonwealth's Br. at 16. However, I respectfully disagree that the court properly suppressed the evidence related to the cell phone search. I would conclude that the Commonwealth demonstrated that, considering the totality of the circumstances, Gallagher's consent to search the cell phone was voluntarily given and not the product of coercion or duress.

The rule that authorities need a warrant before conducting a search, unless an exception applies, extends to searches of cell phones. See Fulton,

179 A.3d at 487. As the Majority states, one such exception is a voluntary consent. The "Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." Commonwealth v. Strickler, 757 A.2d 884, 901 (Pa. 2000). "[K]nowledge of the right to refuse to consent to the search is a factor to be taken into account, [but] the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent." Id. Further, "the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account." Id.

I believe that the trial court's conclusion that Gallagher's consent was not knowing is not supported by the record. At the suppression hearing, Detective Michael Bailey testified that he contacted Gallagher and arranged for him to come to the police station for an interview, and Gallagher arrived at the police station with his father.

Once in the interview room, Gallagher showed Detective Bailey a picture on his cell phone of the two girls with whom he spent time the previous weekend. Detective Bailey asked Gallagher if he minded if they looked at his phone, and Gallagher replied that he had no objection. Detective Bailey asked

Gallagher to sign a consent form, which Gallagher read and signed.[1] The form is not a model of clarity, but it is entitled, "Consent to Search of Stored Electronic Media." The body of the form then begins with an incomplete sentence: "I, _Tod Gallagher_, having been advised of my rights by _Michael Bailey_, consent to having my computer hardware and all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data." Consent to Search of Stored Electronic Media. The form then defines "hardware" as including "cell phones":

> Hardware includes (but is not limited to) any data-processing devices (such as central processing units, memory typewriters, and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as fixed disks, external hard disk drives and diskettes, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, plotters, video display monitors, and optical readers); cell phones, pagers, PDA"s (personal desktop assistants) and related communications devices (such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone - generating devices); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys and locks).

Id.

_____

[1] The Commonwealth admitted the form into evidence, but it is not in the certified record. However, there is a copy of it in the reproduced record. See R.R. 53. Gallagher did not object to the accuracy of the reproduced record. Therefore, we consider the copy in the reproduced record. See Commonwealth v. Brown, 52 A.3d 1139, 1145 n.4 (Pa. 2012).

Gallagher signed the form at the bottom. He then gave Detective Bailey the phone and allowed him to search it. See N.T. Hearing, 7/22/19, at 29-32.

Under these circumstances, I cannot conclude that the record supports the finding that Gallagher's consent was not knowing. The Majority reaches the contrary conclusion because Gallagher allegedly did not know what rights he was relinquishing. In this regard, the Majority appears to agree with the suppression court that Gallagher could not know about "his constitutional right to privacy of the data stored on his cell phone and that he was free to deny the request to consent to [the] search" because the form did not explicitly set them forth and Detective Bailey did not tell him.

I respectfully disagree that the record supports the suppression court's conclusion. Although the text of the form did not explicitly say that Gallagher had a right to privacy to the data and that he could refuse to consent to the search, the surrounding circumstances told him. Both Detective Bailey and the consent form asked Gallagher for his consent, and the act of asking in itself adequately conveyed to Gallagher that the information was private and that he could refuse. Furthermore, Detective Bailey presented the form to Gallagher as a follow-up to his verbal request for consent to "look at" the phone, and in any event, the title of the form made it clear that by signing it, he was consenting to the search. Absolutely nothing in the record suggests that police demanded his consent or employed any trickery to obtain Gallagher's consent without him knowing what he was doing.

In this context, I respectfully disagree that the record supports the determination that Gallagher's consent was not knowing. The suppression court's ruling focused on the text of the form and failed to take into account the totality of the circumstances. As I would conclude that the totality of the circumstances indicates that Gallagher knowingly and voluntarily consented to the search, I would reverse the order of the suppression court. Accordingly, I concur in part and dissent in part.